UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------- x

SCOTT CHERNOFF,

                                    Plaintiff,

-against-

THE CITY OF NEW YORK; NEW YORK CITY POLICE
PENSION FUND (NYCPPF); MICHAEL D. WELSOME,
Director, New York City Police Pension Fund;
RAYMOND W. KELLY, Police Commissioner; JULIUS
MENDEL, M.D., Medical Board, New York City Police
Pension Fund; RICHARD GASALBERTI, M.D., Medical
Board, New York City Police Pension Fund; ARSEN
PANKOVICH, M.D., Medical Board, New York City
Police Pension Fund; JULIE L. SCHWARTZ, Assistant
Commissioner, Department Advocate's Office;
KATHLEEN M. KEARNS, Managing Attorney,
Department Advocate's Office; LOUIS W. LUCIANI,
Deputy Inspector, Department Advocate's Office; PRINCI,
Lieutenant, Department Advocate's Office; CIASIO,
Sergeant, Department Advocate's Office; JOHN DOE 1,
Police Officer, Department Advocate's Office; JOHN DOE
2, Police Officer, Department Advocate's Office; JOHN
DOE 3, Police Officer, Department Advocate's Office;
JOHN DOE 4, Police Officer, Department Advocate's
Office, each being sued individually and in their official
capacities as employees of the NYPD and/or the NYCPPF

                                    Defendants.

------------------------------------------------------------------- x

06 CV 2897 (CPS)(CLP)

**DEFENDANTS'**
**RULE 56.1 STATEMENT**

       Pursuant to Rule 56.1 of the Local Rules of this Court, defendants submit that the following facts are undisputed:

       1.     Plaintiff Scott Chernoff was a Police Officer in the New York City Police Department ("NYPD") who retired in 2005 and claims that he was "prospectively deprived of his constitutional and statutory rights as a result of the defendants' policies and practices of

differentiating between disabilities in the terms and conditions of his employment." See the accompanying February 20, 2008 Declaration of Lawrence J. Profeta ("Profeta Dec."), Exhibit 2 thereto at ¶ 1.[1]

2. According to the complaint, this action is brought under the Americans with Disabilities Act, 42 U.S.C. § 1983, 42 U.S.C. § 1985(3), and the New York State and New York City Human Rights Laws. Plaintiff claims to be the victim of disability discrimination (Counts I, IV, XIII, XVI), retaliation "as a result of his opposition to disability discrimination" (Counts II, V, XIV, XVII), a "hostile work environment" (Counts III, VI, XV, XVIII), and violations of "due process" (Counts IX and X). [2] See Ex. 2.

3. According to documents received from the United States Equal Employment Opportunity Commission ("EEOC"), plaintiff filed his charge of discrimination with the EEOC on or about December 7, 2005. See Exs. 4-5 (EEOC charge with fax print and EEOC Dec. 29, 2005 letter acknowledging receipt of charge).

4. On or about March 8, 2006, the EEOC issued a right to sue letter. Ex. 6 March 8, 2006 letter.

5. On or about June 9, 2006, plaintiff commenced this action by filing a summons and complaint (see Ex.1), and filed a First Amended Complaint in September 2006 (Ex. 2).

---

[1] Unless otherwise noted, the Exhibits referred to herein are annexed to the Profeta Declaration.

[2] Initially, plaintiff also asserted claims for "false imprisonment" (Count VII), infringement of "due process" (Count VIII), "abuse of authority" (Count XI) and "conspiracy" (Count XII). By So-Ordered stipulation dated November 13, 2007, plaintiff withdrew these claims with prejudice and withdrew all claims against defendants Julie L. Schwartz, Kathleen M. Kearns, Louis W. Luciani, Princi, Ciasio, and John Does 1-4. See Ex. 3.

## Background

6. Plaintiff commenced employment as a New York City Police Officer on or about April 30, 1995, and his initial membership date for pension purposes was February 9, 1995 on account of prior service as a Housing Officer. See Ex. 7.

7. Except for a 1999-2000 six month stint in the Latent Print Section of the NYPD, plaintiff worked in the Identification Section of the NYPD from 1997 until the end of his career. See Ex. 8, Chernoff Dep. at 40-42.

8. In the Identification Section, plaintiff did administrative work, working with fingerprints. See Ex. 8, Chernoff Dep. at 43-45.

9. In late 2002, plaintiff became so suicidal and depressed after his marriage broke up that he turned in his guns, and was admitted to Columbia Presbyterian Hospital for psychiatric evaluation, hospitalization and treatment. See Exs. 9-10.

10. In January 2003, plaintiff was placed on modified duty after threatening his estranged wife and her new boyfriend. See Ex. 11.

11. On March 7, 2003, plaintiff was suspended for thirty days after being arrested on March 7, 2003 while off-duty for petit larceny. See Ex. 12.

12. As a result of his thirty day suspension (from March 7, 2003 to April 6, 2003) plaintiff's date of appointment for pension purposes was changed to March 12, 1995. See Ex. 13.

13. In April 2003, plaintiff was served with Charges and Specifications based on his misconduct that led to his March 7, 2003 arrest. See Ex. 14.

14. In July 2003, plaintiff was involved in a domestic incident with his then girlfriend. See Ex. 15.

15. In September 2003, plaintiff was admitted to Columbia Presbyterian Hospital after he became acutely suicidal upon being advised by his Police Benevolent Association attorney that he was likely to lose his job as a result of the March 7, 2003 petit larceny arrest.[3] See Ex. 16.

16. Dr. Benjamin McCommon, the Columbia Presbyterian psychiatrist who treated plaintiff throughout 2003, diagnosed plaintiff as suffering from "Major Depressive Disorder, Alcohol Abuse [with] a concern for Substance Induced Mood Disorder." See, e.g., Ex. 17.

17. In January 2004, plaintiff was served with Charges and Specifications on account of (a) the threats he made against his estranged wife and her then boyfriend in January 2003, and (b) the July 2003 domestic incident between plaintiff and his then girlfriend. See Ex. 18.

18. After the onset of his psychological problems in December 2002, plaintiff was monitored by the NYPD Psychological Evaluation Unit. See Ex. 19.

19. In February 2004, Dr. Catherine Lamstein, the psychologist in the NYPD Psychological Evaluation Unit who monitored plaintiff, stated in a report that plaintiff's "psychological problems are chronic and likely to flare up again when faced with stressful situations," "[t]here is a serious concern about suicidality should that happen, since [plaintiff] came dangerously close to killing himself a year ago and has had persistent thoughts of suicide," and concluded that the "likelihood of [plaintiff] being psychologically fit for full police work in the near future is very poor." See Ex. 19 at p. D00195.

---

[3] Plaintiff ended up pleading guilty to reduced criminal charges arising from the March 7, 2003 arrest. See Ex. 8, Chernoff Dep. at p. 24.

20. In light of Dr. Lamstein's February 2004 report which diagnosed plaintiff with "Major Depressive Disorder" and "Alcohol Dependence," the NYPD Supervising Chief Surgeon recommended to the Police Commissioner that plaintiff be examined by the Medical Board of the New York Police Department Pension Fund ("Medical Board") to determine whether plaintiff should be retired with ordinary disability retirement benefits. See id, at p. D 00187.

21. On May 24, 2004, plaintiff was examined by the Medical Board, which recommended approval of the Police Commissioner's application for plaintiff to be retired with ordinary disability retirement benefits. See Ex. 20.

22. On or about June 4, 2004, plaintiff submitted an application to the Medical Board to be considered for accidental (i.e., service related) disability retirement, contending that he was suffering from, inter alia, Post-Traumatic Stress Disorder as a result of his "9/11/01 response and security of area." See Ex. 21.

23. Although the New York Police Department Pension Fund "shall retire" a police officer who has been found to be disabled by the Medical Board "not less than thirty nor more than ninety days after the execution and filing of application therefor" (see New York City Administrative Code § 13-251), plaintiff's retirement was delayed because on June 15, 2004, plaintiff entered into an "Agreement to Defer Pension Application and Proceedings, and Defer Further Medical Board, Article II, Proceedings pending [the final disposition of the two sets of Disciplinary Charges pending against him]" (see Ex. 22).

24. On August 3, 2004, plaintiff signed a Negotiated Settlement (the "Negotiated Settlement") of the two sets of disciplinary charges pending against him whereby plaintiff (a) forfeited "all time, pay and benefits for the period while under suspension ... from March 7, 2003 to April 7, 2003 for a total of thirty-one (31) days," (b) "waive[d] all accrued time and

leave balances," and (c) agreed that "upon approval of this agreement" plaintiff would "immediately rescind" his prior deferral of further proceedings with regard to his disability retirement "in order for his disability pension application to be calendared at the Police Pension Fund (PPF) at the <u>earliest opportunity</u>."[4] See Ex. 23 (emphasis added).

25. The penalty plaintiff had faced as a result of the disciplinary charges was termination (see Ex. 24; Ex. 8 Chernoff Dep. at pp. 183-84), and as with the Negotiated Settlement, the Dispositions of Charges also expressly provided that plaintiff waived all accrued time and leave balances and stated that plaintiff's disability retirement was not to be deferred any longer and was to be calendared for consideration by the Board of Trustees "at the earliest possible opportunity." See Ex. 24.

26. On October 25, 2004, the NYPD Commissioner approved the Negotiated Settlement (see Ex. 23) and approved the disposition of the two sets of disciplinary charges to which plaintiff pled guilty (see Ex. 24).

27. Nevertheless, it was not until January 27, 2005, that plaintiff presented himself at the offices of the Pension Fund to be processed for disability retirement benefits, and plaintiff represented or requested that his retirement date be March 30, 2005 on account of terminal leave to which he claimed to be entitled. See Ex. 25.

28. If plaintiff had remained on the NYPD payroll past March 12, 2005 – which was his tenth year anniversary for pension purposes – he would have been able to receive an ordinary disability pension equivalent to 50% of his adjusted salary, instead of the 30% to which ordinary disability retirees with less than ten years of service are entitled. See New York City Administrative Code § 13-257(3)(a) (member of the Pension Fund who retires for ordinary

---

[4] The Negotiated Settlement also provided that plaintiff was to immediately file for a "Vested

disability with fewer than 10 years of credited city-service receives a pension equal to one-third of his or her earnable annual compensation on the date of retirement; member with more than 10 years of credited city-service receives a pension equal to one-half of his or her earnable annual compensation).

29. When plaintiff submitted his paperwork on January 27, 2005, he was advised that his leave balances would be audited, and that any errors would be corrected. See Ex. 26.

30. On February 1, 2005, plaintiff was directed to appear at the Department Advocate's Office of the NYPD which determined that in attempting to extend his retirement date, plaintiff had failed to comply with the Negotiated Settlement, and that plaintiff should have been retired as of January 12, 2005 -- which was when the Pension Fund's Board of Trustees approved plaintiff for ordinary disability retirement benefits. See Ex. 27, Kearns Dep. at pp. 17-22.

31. In light of the Department Advocate's Office determination, plaintiff's retirement date was changed from March 30, 2005 to January 12, 2005. See Ex. 28.

32. On April 4, 2005, the Medical Board denied plaintiff's (previously deferred) application for an accidental disability retirement (see Ex. 29).

33. In making its determination, the Medical Board had the medical records of plaintiff's December 2002-December 2003 psychiatric treatment by Columbia Presbyterian physicians and Dr. Lamstein's February 2004 report (see Ex. 29); the only documents plaintiff had provided for his contention that he was suffering from "PTSD" was a one page letter dated March 5, 2005 from Catholic Charities (which stated that plaintiff had "been seen at this clinic since [May 28, 2004]"), and a one page April 1, 2005 letter from his current attorneys. Id.

---

Interest Retirement" if disability retirement were denied. Id.

34. On or about May 26, 2005, plaintiff brought an Article 78 proceeding in the Supreme Court of the State of New York, County of New York, seeking to change his retirement date "so that he may receive an ordinary disability retirement allowance equal to one half of his final salary instead of the one-third he [was] receiving." See Ex. 30. In his Article 78 proceeding, plaintiff did not challenge the determination that he was not entitled to accidental disability retirement benefits. Id.

35. On November 15, 2005, the parties stipulated to discontinue the Article 78 proceeding with prejudice. See Ex. 31.

36. Plaintiff twice thereafter made submissions to the Medical Board seeking an accidental, instead of ordinary, disability retirement; each of these applications were denied – on November 14, 2005 and May 8, 2006. See Exs. 32-33.

37. Plaintiff worked as a security guard during one of his two regular days off while he was employed by the NYPD, and continued to do so until late 2004 or early 2005. See Ex. 8, Chernoff Dep. at pp. 78-82.

**Plaintiff's Claims Have No Basis In Fact**

38. When questioned at deposition for the factual basis for his claims of discrimination, plaintiff testified that he believed that he was misdiagnosed by the Medical Board (and also by the Columbia Presbyterian doctors who had treated him throughout 2003). See Ex. 8, Chernoff Dep. at pp. 266-68.

39. When plaintiff was asked for the basis for his claim that he was a victim of retaliation and other hostile treatment, plaintiff referred to the fact that he had been directed to appear at the Department Advocate's Office on February 1, 2005 to address issues about his retirement date. See Ex. 8, Chernoff Dep. at pp. 268-71.

Dated: New York, New York
February 20, 2008

                MICHAEL A. CARDOZO
                Corporation Counsel of the City of New York
                Attorney for Defendants
                100 Church Street, Room 2-186
                New York, New York 10007
                (212) 788-0954

By: _____
                Lawrence J. Profeta (LP 5674)
                Assistant Corporation Counsel
                Lprofeta@law.nyc.gov

Case No. 06 Civ. 2897 (CPS) (CLP)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

SCOTT CHERNOFF,

                                             Plaintiff,

-Against-

THE CITY OF NEW YORK, et al.,

                                            Defendants.

**DEFENDANTS' RULE 56.1 STATEMENT**

*MICHAEL A. CARDOZO*
*Corporation Counsel of the City of New York*
*Attorney for Defendants*
*100 Church Street, Room 2-186*
*New York, N.Y. 10007*

*Of Counsel: Lawrence Profeta*

*Tel: (212) 788-0954*
*Matter No. 2006-006956*

*Due and timely service is hereby admitted.*

*New York, N.Y. ......................................., 200......*

*............................................................................ Esq.*

*Attorney for ........................................................................*