UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------X

Scott Chernoff,

                                                    06-CV-2897
                                                    (CPS)(CLP)

                                    Plaintiff,

            - against -

                                                    MEMORANDUM
                                                    OPINION AND
The City of New York; New York City Police          ORDER
Pension Fund; Michael D. Welsome, Director
New York City Police Pension Fund; Raymond
Kelly, Police Commissioner; Julius
Mendel, M.D., Medical Board, New York City
Police Pension Fund; Richard Gasalberti, M.D.,
Medical Board, New York City Police Pension
Fund; Arsen Pankovich, M.D. Medical Board,
New York City Police Pension Fund, each being
sued individual and in their official
capacities as employees of the NYPD and/or
the NYCPFF,

                                    Defendants.

--------------------------------------------X

SIFTON, Senior Judge.

        Plaintiff Scott Chernoff commenced this action on June 9,

2006 against defendants the City of New York ("City"); the New

York City Police Pension Fund (the "Police Pension Fund");

Michael D. Welsome, Director of the New York City Police Pension

Fund; Raymond W. Kelly, Police Commissioner; Julius Mendel, M.D.,

Richard Gasalberti, M.D., and Arsen Pankovich, M.D., of the New

York City Police Pension Fund Medical Board; Julie L. Schwartz,

Kathleen M. Kearns, Louis W. Luciani, Carl Princi, Walter Cacaj,

and John Doe Police Officers # 1-4, of the New York Police

Department ("NYPD") Advocate's Office, each sued in their

individual and official capacities.  On September 11, 2008, I

granted summary judgment in defendants' favor on plaintiff's

disability discrimination claims, substantive due process claim

under 42 U.S.C. § 1983, and procedural and substantive due

process claims under the Fifth Amendment.[1]  *Chernoff v. City of*

*New York*, No. 06-CV-2897, 2008 WL 4239161 (E.D.N.Y. Sept. 11,

2008).  The following claims remain to be determined:  (1)

plaintiff's procedural due process claim under § 1983, to the

extent that plaintiff claims his procedural due process rights

were violated on account of established state procedures[2]; and

(2) plaintiff's claim for deprivation of his constitutional

rights under § 1983.[3]  Presently before this Court is defendants'

---

[1] In addition, on November 19, 2007, the parties stipulated to the
dismissal of the following defendants with prejudice: Julie L. Schwartz,
Kathleen N. Kearns, Louis W. Luciani, Carl Princi, Walter Cacaj, and John Doe
Police Officers 1-4.  The parties also agreed to the withdrawal of the
following claims with prejudice: false imprisonment, abuse of authority,
infringement of right to due process, and conspiracy to interfere with civil
rights.
    After defendants filed their first motion for summary judgment,
plaintiff, in his brief in opposition, withdrew his "retaliation" and "hostile
work environment" claims.  In my September 11, 2008 memorandum and opinion, I
construed plaintiff's withdrawal as relating to all of the retaliation and
hostile work environment claims asserted in the complaint, including
plaintiff's retaliation and hostile work environment claims under § 1983.
*Chernoff*, 2008 WL 4239161 at *1 n.1.

[2] In my previous decision, I determined that "[t]o the extent that
plaintiff claims his procedural due process rights were violated on account of
random, unauthorized acts on the part of defendants, an Article 78 proceeding
provided the proper course of action and plaintiff's procedural due process
claims fail as a matter of law."  *Chernoff*, 2008 WL 4239161 at *7.  However,
because the parties did not address whether defendants acted pursuant to
established state procedures in determining plaintiff's disability pension
eligibility, I held that plaintiff's procedural due process claim could not be
dismissed as a matter of law.  *Id.*

[3] In my previous decision, I considered only plaintiff's § 1983 due
process claims, reasoning as follows:

renewed motion for summary judgment with respect to these claims.
For the reasons set forth below, defendants' motion is granted.

## BACKGROUND

Familiarity with the underlying facts and circumstances of
this case is presumed based on the factual background recited in
my memorandum opinion addressing defendants' first motion for
summary judgment. *See Chernoff*, 2008 WL 4239161, at *1-5. What
follows is a recent procedural history of this case.

On November 3, 2008, I granted defendants leave to renew
their motion for summary judgment to address plaintiff's
remaining claims. During a December 11, 2008 telephone
conference with Magistrate Judge Pollack, plaintiff was directed
to and agreed to identify his remaining claims under § 1983,
aside from his procedural due process claim. Plaintiff's Rule
56.1 Statement dated February 13, 2009 ("Pl.'s Stmt.") ¶ 7. By
letter dated December 11, 2008, plaintiff stated that his
remaining § 1983 claims other than his procedural due process
claim were for "disability discrimination (Count IV), retaliation

---

[Plaintiff's] amended complaint alleges that defendants deprived him of
his "constitutional rights, including the rights: to enjoy freedom of
speech, movement, association and assembly, to petition his government
for redress of his grievances, to be secure in his person, to be free
form unreasonable search and seizures, to enjoy privacy, to be free from
deprivation of life, liberty, and property without due process of law."
Second Amended Complaint ¶ 79. Since defendants' summary judgment
motion focuses on plaintiff's due process claims, I only consider the
due process claims.

*Chernoff*, 2008 WL 4239161 at *7 n.9.

(Count V) and hostile work environment (Count IV) [sic]." *Id.*
Defendants' renewed motion for summary judgment followed on
January 5, 2009. During the briefing of this motion, plaintiff
withdrew his hostile work environment claim under § 1983.

**DISCUSSION**

I. <u>Summary Judgment Standard</u>

A court must grant a motion for summary judgment if the
movant shows that "there is no genuine issue as to any material
fact" and that "the moving party is entitled to a judgment as a
matter of law." Fed. R. Civ. P. 56(c). Summary judgment is
appropriate "[w]hen the record taken as a whole could not lead a
rational trier of fact to find for the non-moving party."
*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S.
574, 587 (1986). "An issue of fact is genuine if the evidence is
such that a reasonable jury could return a verdict for the
nonmoving party." *Elec. Inspectors, Inc. v. Vill. of E. Hills*,
320 F.3d 110, 117 (2d Cir. 2003). A fact is material when it
"might affect the outcome of the suit under the governing law."
*Id.*

The party seeking summary judgment has the burden of
demonstrating that no genuine issue of material fact exists.
*Apex Oil Co. v. DiMauro*, 822 F.2d 246, 252 (2d Cir. 1987). In
order to defeat such a motion, the non-moving party must raise a
genuine issue of material fact. Although all facts and

inferences therefrom are to be construed in the light most favorable to the non-moving party, the non-moving party must raise more than a "metaphysical doubt" as to the material facts. *See Matsushita*, 475 U.S. at 586; *Harlen Assocs. v. Vill. of Mineola*, 273 F.3d 494, 498 (2d Cir. 2001). The non-moving party may not rely on conclusory allegations or unsubstantiated speculation. *Twin Labs., Inc. v. Weider Health & Fitness*, 900 F.2d 566, 568 (2d Cir. 1990). Rather, the non-moving party must produce more than a scintilla of admissible evidence that supports the pleadings. *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289-90 (1968); *Niagara Mohawk Power Corp. v. Jones Chem. Inc.*, 315 F.3d 171, 175 (2d Cir. 2003). In deciding such a motion, the trial court must determine whether "after resolving all ambiguities and drawing all inferences in favor of the non-moving party, a rational juror could find in favor of that party." *Pinto v. Allstate Ins. Co.*, 221 F.3d 394, 398 (2d Cir. 2000).

II. <u>Section 1983 Claims</u>

"Section 1983 provides an instrument by which an individual deprived of a federal right by a person acting under color of state law may be compensated." *Eagleston v. Guido*, 41 F.3d 865, 875 (2d Cir. 1994) (citing *Parratt v. Taylor*, 451 U.S. 527, 535

(1981)).[4]  Section 1983 itself creates no substantive rights; it
provides "only a procedure for redress for the deprivation of
rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519
(2d Cir. 1993), *cert. denied*, 512 U.S. 1240 (1994).  "It is well
established that in order to state a claim under § 1983, a
plaintiff must allege (1) that the challenged conduct was
attributable at least in part to a person acting under color of
state law, and (2) that such conduct deprived the plaintiff of a
right, privilege or immunity secured by the Constitution or laws
of the United States."  *Id.* at 875-76 (quoting *Dwares v. City of
New York*, 985 F.2d 94, 98 (2d Cir. 1993)).

There is no dispute that defendants were, at all relevant
times, acting under color of state law.  In his various § 1982
claims, plaintiff contends that defendants deprived him of his
rights under the Fourteenth Amendment to the Constitution:  in
particular, his property interests in his employment and his
retirement benefits.

A.    *Procedural Due Process Claim*

The remaining portion of plaintiff's § 1983 procedural due

---

[4]  42 U.S.C. § 1983 provides in relevant part:

Every person who, under color of any statute, ordinance, regulation,
custom, or usage, of any State . . . subjects, or causes to be
subjected, any citizen of the United States . . . to the deprivation of
any rights, privileges, or immunities secured by the Constitution and
laws, shall be liable to the party injured in an action at law[.]

42 U.S.C. § 1983.

process claim asserts that plaintiff was denied procedural due

process when defendants, according to established state

procedures,[5] took disciplinary measures against him and

determined that he was ineligible for service-related accidental

disability retirement benefits.  In order to determine whether

defendants deprived plaintiff of his right to procedural due

process, I must consider "two threshold questions . . . whether

the plaintiff possessed a liberty or property interest protected

by the United States Constitution or federal statutes, and, if

so, what process was due before the plaintiff could be deprived

of that interest."  *Green v. Bauvi*, 46 F.3d 189, 194 (2d Cir.

1995).  I consider these questions in turn.

    With regard to plaintiff's possession of a protected liberty

or property interest, I note that until his retirement in 2005,

plaintiff was employed by New York City as a police officer.

Section 14-115 of the New York City Administrative Code provides

that New York City police officers may be disciplined or

terminated "only on written charges made or preferred against

---

    [5] As I noted in my prior opinion, "there *is no* [procedural due process] violation (and no available § 1983 action) when there is an adequate state postdeprivation procedure to remedy a random, arbitrary deprivation of property[.]"  *Hellenic Am. Neighborhood Action Comm. v. City of New York*, 101 F.3d 877, 882 (2d Cir. 1996) (emphasis in original) (citations omitted). Because a postdeprivation procedure was available to plaintiff in the form of an Article 78 proceeding, *see* N.Y. C.P.L.R. § 7803(3), I held that "[t]o the extent that plaintiff claims his procedural due process rights were violated on account of random, unauthorized acts on the part of defendants, an Article 78 proceeding provided the proper course of action and plaintiff's procedural due process claims fail as a matter of law."  *Chernoff*, 2008 WL 4239161, at *7.

them, after such charges have been examined, heard and
investigated by the commissioner or one of his or her deputies,"
with notice to the offending officer.  N.Y.C. Admin. Code §
14-115.  There is no question that "[a] public employee who has a
right not to be fired without 'just cause' . . . has a property
interest in [his] employment that qualifie[s] for the protections
of procedural due process."  *Otero v. Bridgeport Hous. Auth.*, 297
F.3d 142, 151 (2d Cir. 2002) (internal citations omitted).  In
addition, the Second Circuit has held that "municipal employee
retirement benefits are constitutionally protected property," and
that "[t]he entitlement to disability retirement is a
constitutionally protected property interest for purposes of
Section 1983."  *Russell v. Dunston*, 896 F.2d 664, 668-69 (2d Cir.
1990) (citing, *inter alia*, *Bd. of Regents v. Roth*, 408 U.S. 564,
577 (1972)).  Therefore, plaintiff possesses constitutionally
protected property interests in his employment and in his
retirement benefits, which are entitled to the protections of
procedural due process.

Having concluded that plaintiff possesses protected property
interests, I proceed to determine what process is due to
plaintiff before he may be deprived of these interests.  With
regard to the disciplinary measures taken against plaintiff,
which could have resulted in plaintiff's termination, the Supreme
Court has held that where a public employee is entitled to

procedural due process in connection with threatened termination, the requirement of due process is satisfied if the employee receives: (i) notice of the adverse disciplinary charges; (ii) an opportunity to respond prior to termination; and (iii) a full post-termination hearing. *See Cleveland Bd. Of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985). The procedures made available to plaintiff in connection with the disciplinary charges against him satisfied this standard. In April of 2003 and January of 2004, defendants supplied plaintiff with advance written notice of two sets of disciplinary charges issued against him. They also afforded plaintiff an opportunity to be heard on the charges. When plaintiff and his then-counsel appeared for trial on the charges in August of 2004, plaintiff agreed to plead guilty to the charges and to enter into a negotiated settlement, which did not result in his termination. Therefore, no post-termination hearing was necessary. Having provided adequate notice to plaintiff and an opportunity to respond, defendants satisfied their due process obligations to plaintiff in connection with the disciplinary charges.

Turning to the process due to plaintiff in connection with his application for an accidental disability pension, courts in this circuit have repeatedly held that the procedures available to police officers seeking accidental disability retirement pensions satisfy due process requirements. *See, e.g., McDarby v.*

*Dinkins*, 907 F.2d 1334, 1337 (2d Cir. 1990); *Calzarano v. Bd. of
Trustees of the Police Pension Fund*, 877 F.Supp. 161, 164
(S.D.N.Y. 1995).  In *McDarby*, a case in which a police officer
asserted a procedural due process claim following the denial of
his application for an accidental disability pension, the Second
Circuit stated as follows:

> The procedures employed by the Medical Board and the Board
> of Trustees in determining McDarby's pension eligibility
> closely parallel those we upheld as meeting the basic
> "notice" and "hearing" requirements of procedural due
> process in *Basciano v. Herkimer*, 605 F.2d 605 (2d Cir.
> 1978).  McDarby's complaint makes clear that the Medical
> Board physically examined him, received written submissions
> that were proffered on his behalf, reviewed his medical
> records, and reconsidered its original adverse determination
> upon his request.  Due process requires no more.

*McDarby*, 907 F.2d 1334, 1337.  The procedures described in
McDarby were made available to plaintiff here.  In March of 2004,
plaintiff received written notice that the NYPD Supervising Chief
Surgeon had recommended that he be examined by the Police Pension
Fund Medical Board ("Medical Board") to determine whether he
should be involuntarily retired with accident or ordinary
disability benefits.[6]  On May 24, 2004, the Medical Board

---

[6] The notice stated, *inter alia*, as follows:

[T]he Police Commissioner has recommended that the Police Pension Fund
Article 2 Medical Board examine you to determine if you should be
retired on an Accident or Ordinary Disability Retirement.  If the
Article 2 Medical Board determines that you are disabled from the
performance of full police duties, and the Police Pension Fund Board of
Trustees concurs, you will be retired on a Disability Retirement.  If
the Police Commissioner's application is for Ordinary Disability
Retirement and you believe your disability was the natural and proximate
result of a line of duty accident, you may apply for, and be considered
for, an Accident Disability Retirement.

examined plaintiff, reviewed his medical records, and recommended that plaintiff be retired with ordinary disability benefits. Thereafter, on June 4, 2004, plaintiff applied for service-related accidental disability retirement.  Plaintiff was afforded the opportunity to submit any evidence he wished in support of his application.  After reviewing the medical records available to it, including materials submitted by plaintiff, the Medical Board denied plaintiff's application on April 4, 2005.  Following two subsequent applications, during which the Board interviewed plaintiff and reviewed additional materials he submitted in support of his application, the Board reconsidered and again denied plaintiff's application for accidental disability benefits on November 14, 2005 and May 8, 2006.  No reasonable fact-finder could find that plaintiff was not afforded his basic procedural rights to notice and a hearing via these procedures, and accordingly, defendants met the requirements of procedural due process with regard to plaintiff's disability benefits application.

Plaintiff himself concedes that the procedures made available to him in connection with the disciplinary charges and his disability benefits application were not deficient; rather, he argues that "it was the discriminatory manner in which these

---

Declaration of Lawrence J. Profeta dated January 5, 2009 ("Profeta Decl."), Ex. 18, ¶¶ 1-3 (internal paragraph numbering omitted).

procedures and processes were applied against plaintiff that is
the bases [sic] of his claims." Pl.'s Mem. in Opp'n at 5. I
have already ruled upon plaintiff's various discrimination claims
in defendants' favor. *See Chernoff*, 2008 WL 4239161, at *5-6.
To the extent that plaintiff now argues that defendants did not
abide by their own policies or regulations with regard to
required procedures, a § 1983 claim is not the proper vehicle for
resolution of this dispute. The Second Circuit has endorsed the
view that "[w]hen the minimal due process requirements of notice
and hearing have been met, a claim that an agency's policies or
regulations have not been adhered to does not sustain an action
for redress of procedural due process violations." *McDarby*, 907
F.2d at 1337-38 (internal citations omitted). Accordingly, "the
enforcement of state regulations . . . is to be done through the
state court system and not in an action under 42 U.S.C. §§ 1981
[or] 1983, where no federal constitutional guarantees have been
violated." *Id.* at 1338. No reasonable fact-finder could find
that basic requirements of due process were not met with regard
to the disciplinary charges against plaintiff and plaintiff's
application for accidental disability benefits. Accordingly,
summary judgment is granted in defendants' favor on plaintiff's
procedural due process claim.

B.   *Disability Discrimination Claim*

     In his December 11, 2008 letter to defendants, plaintiff

stated that his remaining § 1983 claims included a claim for disability discrimination. *See* Profeta Decl. Ex. 7 (copy of letter). Plaintiff, however, has not discussed his allegedly remaining § 1983 disability discrimination claim in his opposition papers. The Amended Complaint does not set forth the constitutional or statutory basis upon which plaintiff's § 1983 disability discrimination claim is predicated. *See* Am. Compl. ¶¶ 79-85. Even assuming that plaintiff's § 1983 disability discrimination claim alleges a violation of a the Americans with Disabilities Act ("ADA"), *see* 42 U.S.C. § 12132, it is doubtful that plaintiff could properly assert such a claim.[7] In any case, I have already determined that defendants' conduct did not violate the ADA. *Chernoff*, 2008 WL 4239161, at *5-6.

---

[7] As another court in this district recently noted:

[A]t least one court in this Circuit has held that a plaintiff cannot recover under § 1983 for violations of [the ADA]. *See Bartlett v. New York State Bd. of Law Examiners*, 970 F.Supp. 1094, 1144-45 (S.D.N.Y. 1997), *aff'd in part and vacated in part on other grounds*, 156 F.3d 321 (2d Cir.1998), *vacated on other grounds*, 527 U.S. 1031 (1999). "A plaintiff alleging a violation of a federal statute will be permitted to sue under § 1983 unless (1) 'the statute [does] not create enforceable rights, privileges, or immunities within the meaning of § 1983,' or (2) 'Congress has foreclosed such enforcement of the statute in the enactment itself.'" *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508 (1990) (quoting *Wright v. City of Roanoke Redevelopment & Housing Auth.*, 479 U.S. 418 (1987)). Congress's intent to foreclose § 1983 actions for the violation of certain statutes may be implied when "the statutes at issue themselves provide[ ] for private judicial remedies, thereby evidencing congressional intent to supplant the § 1983 remedy." *Wright*, 479 U.S. at 427. Accordingly, in *Bartlett*, Judge Sotomayor reasoned that, because "the ADA and the Rehabilitation Act provide 'sufficiently comprehensive' remedies for violations of plaintiff's rights," the plaintiff was foreclosed from recovering under § 1983 as well. *Bartlett*, 970 F.Supp. at 1145.

*Stamm v. New York City Transit Auth.*, No. 04-CV-2163, 2006 WL 1027142, at *7 n.1 (E.D.N.Y. Feb. 7, 2006).

Accordingly, assuming plaintiff's § 1983 disability

discrimination claim survived defendants' first motion for

summary judgment, summary judgment on that claim is granted in

defendants' favor.

C.    *Retaliation Claim*

Finally, plaintiff argues that defendants violated § 1983

when they brought disciplinary charges against him and denied his

application for accidental disability retirement in retaliation

for the exercise of his constitutional rights.  As an initial

matter, I note that plaintiff withdrew his retaliation claims

during the briefing of defendants' first motion to dismiss.

*Chernoff*, 2008 WL 4239161 at *1 n.1; *see also supra* n.1.

Plaintiff now contends that he withdrew only his retaliation

claim under the ADA, not his § 1983 retaliation claim.  Pl.'s

Mem. in Opp'n at 11.  Even if I were to assume that plaintiff has

not withdrawn his § 1983 retaliation claim, however, I conclude

that the claim fails on its merits.

The Second Circuit has recognized that "a claim for relief

may be stated under section 1983 if otherwise routine

administrative decisions are made in retaliation for the exercise

of constitutionally protected rights."  *Gill v. Mooney*, 824 F.2d

192, 194 (2d Cir. 1987).  "In order to state a claim for

retaliation under section 1983, a plaintiff must show that: (1)

his actions were protected by the Constitution or federal law;

and (2) the defendant's conduct complained of was in response to
that protected activity." *Friedl v. City of New York*, 210 F.3d
79, 85 (2d Cir. 2000) (internal quotation marks omitted) (citing
*Posr v. Court Officer Shield # 207*, 180 F.3d 409, 418 (2d Cir.
1999)).  Although he asserts that he "exercised his
constitutional right to obtain an accidental disability pension,"
or "his right to, at the very least, obtain an ordinary
disability pension based upon ten years of service," Pl.'s Mem.
in Opp'n at 11-12, plaintiff has not clearly identified the
constitutional or federal rights the exercise of which allegedly
occasioned retaliation by defendants.[8]  Even assuming, without
deciding, that plaintiff's actions in applying for a disability
pension were constitutionally protected, no reasonable fact-
finder could find that the conduct of which plaintiff complains
was pursued in response to those actions.

Plaintiff first applied for accidental disability benefits
on June 4, 2004.  Much of the conduct of which plaintiff
complains -- such as the disciplinary charges issued against him,
his 31-day suspension, and the alleged misrepresentation as to

---

[8] In his Amended Complaint, plaintiff asserts that defendants violated
several of his constitutional rights, but does not explain how his application
for a disability pension is protected by the rights he claims were violated.
*See* Am. Compl. at ¶ 87 (alleging that defendants, in violation of § 1983,
conspired "to deprive plaintiff of his pension and constitutional rights,
including the rights: to enjoy freedom of speech, movement, association and
assembly, to petition his government for redress of his grievances, to be
secure in his person, to be free from unreasonable searches and seizures, to
enjoy privacy, to be free from deprivation of life, liberty and property
without due process of law").

the cause of plaintiff's mental condition in a report by the
Psychological Evaluation Unit of the NYPD -- occurred prior to
June 4, 2004, and thus could not have been motivated by
retaliatory animus.  Plaintiff also complains of defendants'
February 1, 2005 recalculation of his retirement date from March
30, 2005 to January 12, 2005, which rendered plaintiff ineligible
for the maximum benefits under the ordinary disability pension
plan.  Defendants assert, however, that the recalculation was not
made in retaliation for plaintiff's actions, but rather pursuant
to the terms of the negotiated settlement relating to plaintiff's
disciplinary charges.  In that agreement, which was approved on
October 25, 2004, plaintiff agreed to "waive all accrued time and
leave balances" and to "immediately rescind" his prior deferral
of adjudication of his retirement application "in order for his
disability pension application to be calendared at the Police
Pension Fund (PPF) at the earliest opportunity."  Profeta Decl.
Ex. 23 (copy of agreement), Ex. 24 (October 25, 2005 approval of
agreement and disposition of charges by NYPD Commissioner).
Plaintiff did not submit his retirement paperwork until January
27, 2005, however, and was informed on the same day that an audit
of his time record would be performed.  *Id.* Ex. 25 ("Retiree Data
Sheet" dated January 27, 2005 reflecting potential March 30, 2005
retirement date in light of terminal leave balances); Ex. 26
(acknowledgment of future audit signed by plaintiff and dated

January 27, 2005).  On February 1, 2005, defendants readjusted plaintiff's retirement date to January 12, 2005, the date the NYPD Pension Fund's Board of Trustees approved plaintiff for ordinary disability retirement benefits.  *Id.* Ex. 27 at 21:8-22:2 (deposition testimony of defendant Kathy Kearns, NYPD managing attorney).  According to defendants, the readjustment was performed so as to comply with the terms of the negotiated agreement, which required plaintiff to rescind the deferral of consideration of his benefits application and effectively vacated plaintiff's accrued time and leave balances.  *Id.*

Defendants have offered a legitimate, non-retaliatory reason for their recalculation of plaintiff's retirement date by reference to the terms of the negotiated settlement.  Plaintiff's rebuttal consists of conclusory allegations that defendants' proffered explanation is pretextual and denials that he agreed to waive accrued time and leave balances.  A non-moving party "may not rest upon mere conclusory allegations or denials" to survive a motion for summary judgment.  *Sec. and Exch. Comm'n v. Research Automation Corp.*, 585 F.2d 31, 33 (2d Cir. 1978).  Construing all of the facts and drawing all inferences in the light most favorable to plaintiff, no reasonable fact-finder could find that the recalculation of plaintiff's retirement date was motivated by retaliatory animus towards plaintiff on account of his application for service-related accident disability benefits.

Accordingly, defendants' motion for summary judgment on
plaintiff's § 1983 retaliation claim is granted.

## CONCLUSION

For the reasons set forth above, defendants' motion for
summary judgment is granted.  The Clerk is directed to transmit a
copy of the within to the parties and the Magistrate Judge.


SO ORDERED.

Dated:      Brooklyn, NY
            March 25, 2009


                        By: /s/ Charles P. Sifton (electronically signed)
                            United States District Judge